IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Residential Finance :
Corporation,

      Plaintiff, :

  v. : Case No. 2:13-cv-1167

Daniel Jacobs, et al., : JUDGE GEORGE C. SMITH
                                    Magistrate Judge Kemp
      Defendants. :

OPINION AND ORDER

I. Introduction

In this commercial case, the parties' claims and counterclaims all arise out of a prior employment relationship between Plaintiff Residential Finance Corporation and Defendant Daniel Jacobs. After Mr. Jacobs stopped working for Residential Finance, he and that company signed a supplement to his original employment agreement that called for severance payments to be made over a twelve-month period. There were other terms to this agreement, including one which required Defendant Belvedere Group, LLC, a company controlled by Mr. Jacobs, to sublease office space in North Carolina. The supplement also stated that in the event the Defendants breached "any Promise, Representation or Warranty" in the agreement, Residential was relieved of any duty to perform further and was entitled to a full refund of any money paid to Mr. Jacobs. See Complaint, Doc. 2, Exhibit 2, ¶1.

According to the complaint, after Residential paid $15,000 to Mr. Jacobs under the Supplemental Agreement, it discovered that Mr. Jacobs and Belvedere were in breach. As a result, it stopped making payments and filed suit in the Court of Common Pleas of Franklin County, Ohio. The case was removed to this

Court based on diversity jurisdiction.  Although not especially relevant to the motion addressed in this Opinion and Order, Mr. Jacobs, unaware that he had been sued in Ohio, filed suit in a North Carolina state court one day after Residential Finance filed suit in Ohio.

This Opinion and Order addresses Defendants' motion to change venue.  Defendants assert that this case arose out of an employment relationship which was created in North Carolina and pursuant to which Mr. Jacobs, a North Carolina resident, worked out of an office in North Carolina; that all of the events underlying Residential Finance's breach of contract occurred in North Carolina; and that the witnesses to those events live in that State.  Consequently, they ask the Court to exercise its discretion under 28 U.S.C. §1404(a) to transfer the case to the Western District of North Carolina, a judicial district in which, both parties agree, the case could have been brought.  The motion to change venue is fully briefed.  For the following reasons, the Court will grant Defendants' Motion to Transfer Venue to the Western District of North Carolina.  (Doc. 9).

## II. The Facts

There are not an overwhelming number of facts in the record. They fall into two categories: what the Supplemental Agreement has to say about choice of law and venue, and which state - Ohio or North Carolina - has a closer contact to the operative events and the likely witnesses.  The Court begins with the relevant contract language.

Although Defendants cite to provisions of both Mr. Jacobs' original employment agreement and the supplement concerning choice of law and venue, it is clear that only the latter agreement is relevant.  While the first paragraph of the supplement provides that certain terms of the prior agreement remain in effect, that would be so only "unless specifically

2

contradicted by this Agreement."  Paragraph Eight then says, somewhat paradoxically, that the supplement is "subject to the terms of the May 8, 2013 Agreement, including venue and choice of law," and then completely replaces those provisions with new language.  The new language retains the original choice of governing law – North Carolina – but changes mandatory venue provisions to permissive ones, allowing Mr. Jacobs to sue for breach in Mecklenburg County, North Carolina, while permitting Residential Finance to sue in Franklin County, Ohio.  To quote ¶8,

> Employee agrees that: (i) any action brought by him or on his behalf, concerning, relating to or involving the Agreement, any other agreements entered into pursuant to this Agreement, or any other term or condition of employment with the Company, may be venued in Mecklenburg County, North Carolina and (ii) any action brought by the Company, or on its behalf, concerning related to or involving this Agreement, or any other agreements entered into pursuant to this Agreement, may be venued in Franklin County, Ohio.

Each party followed this provision when filing the two pending cases.

The remaining facts are found in two affidavits signed and filed by Mr. Jacobs[1] (Residential Finance did not submit any affidavits or other evidence as part of its response to the

---

[1] On February 20, 2014, the Court noted that the affidavit attached to the reply memorandum was not signed and ordered Defendants to file a signed copy within seven days.  (Doc. 30). The Court's Order mistakenly identified the unsigned affidavit as being attached to Doc. 19.  In fact, the unsigned affidavit was attached to the reply memorandum filed as Doc. 18, and Defendants corrected that error on February 6, 2014 with their Notice of Filing Affidavit of Daniel Jacobs filed as Doc. 19.  So, Doc. 19 actually contained the executed affidavit.  Doc. 19 includes a certificate of service indicating that it was properly served on Plaintiff, and, accordingly, the facts sworn to in that affidavit are properly considered in this Opinion and Order.

3

motion).  The Court finds these pertinent facts in the affidavits:

1.  Mr. Jacobs lives in North Carolina and worked out of a Residential Finance office in North Carolina.

2.  He signed both agreements in North Carolina.

3.  He has identified eight likely witnesses in this case, all of whom are currently North Carolina residents.  Most worked for Residential Finance in North Carolina.  At least one is a North Carolina resident with no connection, past or present, to Residential Finance.

4.  These witnesses, whom Defendants expect to depose, can testify about most of the material allegations in the amended complaint, including failure to return company property, failure to secure a refund for "NASCAR leads," payment of unauthorized bonuses to branch managers and employees, Belvedere's failure to sublease the premises described in the Supplemental Agreement, and misrepresentations allegedly made by Mr. Jacobs while employed by Residential Finance.

### III.  The Law

The parties do not seriously dispute the legal principles relating to changes of venue ordered pursuant to 28 U.S.C. §1404(a), but disagree about the way those principles should be applied here.  It is worth recounting, however, before describing these general principles, the significance, if any, of the venue clauses contained in the Supplemental Agreement.

As noted above, both clauses state that suit "may" be filed in either Mecklenburg County, North Carolina, or Franklin County, Ohio, depending upon which party files suit.  Such language is properly described as permissive rather than mandatory, meaning, generally, that although it permits a case to be filed in a particular jurisdiction, it does not preclude the case from being filed elsewhere.  See, e.g., Excell, Inc. v. Sterling Boiler &

Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997) (distinguishing between mandatory and permissive forum selection clauses).  The parties knew how to use mandatory language when they wanted to, as they did in their original employment agreement, which used the language "shall be venued."  (Doc. 6, Ex. 1 at ¶5(f)).  In light of the permissive language of the Supplemental Agreement and the fact that Defendants reside in North Carolina, the parties do not dispute that this action might properly have been brought in the Western District of North Carolina, and therefore, could be transferred there if the facts warrant a transfer of venue.

In arguing against the transfer, Residential points to a recent Supreme Court decision considering the impact of a mandatory forum-selection language on a court's weighing of the factors involved in a motion to transfer.  That decision holds that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 579 (2013) (quoting Stewart Org., Inc. v. Ricoh, Inc.,487 U.S. 22, 33 (1982) (Kennedy, J., concurring)).  The Supreme Court reasoned that "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" Id. at 581 (quoting Stewart Org., Inc., 487 U.S. at 33 (Kennedy, J., concurring)).  However, the forum-selection clause at issue in that case stated that all disputes between the parties "shall be litigated in" specified courts, and the Supreme Court did not construe language similar to that used by the parties in this case.  See id. at 575.

In contrast with the forum-selection clause at issue in Atlantic Marine, the forum-selection clause at issue here is

5

permissive. Accordingly, what the parties "bargained for" and what their "legitimate expectations" were differ from those of the parties involved in Atlantic Marine. Consequently, when a court gives "controlling weight" to this type of clause, it generally concludes that the clause does not require an action to be brought in a particular forum, but rather prevents the parties from arguing that the locations specified in the agreement are not proper venues. See e.g., Martin Eng'g Co. v. Nark, 2013 WL 4501410 (N.D. Ill. Aug. 22, 2013).

There are, to be sure, cases suggesting that there is no functional difference between permissive forum-selection clauses and mandatory ones. See, e.g., United Am. Healthcare Corp. v. Backs, 2014 WL 555194, *2, *7 (E.D. Mich. Feb. 12, 2014). However, in that case, the parties' agreement "expressly waive[d] any claim of improper venue and any claim that such courts are an inconvenient forum." Id. at *2. The latter language is absent in the agreement reached between Residential and Mr. Jacobs. Accordingly, the Court will grant the parties exactly what they parties have bargained for - an agreement that prevents, in this case, Defendants from arguing that Ohio is an improper venue and that a transfer is warranted under 28 U.S.C. §1406. Since Defendants have not made that argument, however, they have not violated the agreement, nor is their §1404 motion in conflict with it.

Turning now to the merits of the motion, the factors which a district court may consider in deciding a §1404(a) motion are well-summarized as follows:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the

6

interests of justice be better served by transfer to a different forum." 15 WRIGHT, MILLER AND COOPER [FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS, (2d Ed. 1986)], § 3847. While there is no definitive formula or list of the factors to consider, ... courts have considered many variants of the private and public interests protected by the language of § 1404(a).

The private interests have included: plaintiff's forum preference as manifested in the original choice, ... the defendant's preference,...; whether the claim arose elsewhere, ...; the convenience of the parties as indicated by their relative physical and financial condition, ...; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, ...; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum),...

The public interests have included: the enforceability of the judgment, ...; practical considerations that could make the trial easy, expeditious, or inexpensive, ...; the relative administrative difficulty in the two fora resulting from court congestion, ...; the local interest in deciding local controversies at home, ...; the public policies of the fora,...; and the familiarity of the trial judge with the applicable state law in diversity cases ....

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)(internal citations omitted); see also Slate Rock Const. Co. Ltd. v. Admiral Ins. Co., 2011 WL 3841691, *6 (S.D. Ohio Aug. 30, 2011). Defendants concede that they bear the burden of showing the need to transfer venue. (Doc. 9 at 4 (citing Slate Rock Const. Co. Ltd. v. Admiral Ins. Co., 2011 WL 3841691, at *5 (additional citation omitted)).

First, Defendants argue that the claims arose in North Carolina. Defendants have provided evidence that Mr. Jacobs lives in North Carolina, worked out of a Residential Finance office in North Carolina, and signed both agreements in North

7

Carolina.  Defendants have also pointed to the allegations in the amended complaint describing conduct that occurred in North Carolina.  (See Doc. 5 at ¶¶ 26, 51, and 65-67).  Residential's primary argument on this factor is that each action which Defendants took in North Carolina caused an effect in Ohio.  However, Residential has not submitted any evidence to support that assertion, and, in any event, it would not change the fact that actions underlying most of Residential's claims happened in North Carolina.  Based on the record before the Court, it is clear that the relationship between the litigation and North Carolina is much stronger than the relationship between the litigation and Ohio.

Second, Defendants argue that the vast majority of witnesses reside in North Carolina.  "The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. §1404(a)."  15 C.A. Wright, A.R. Miller & E.H. Cooper, Fed. Prac. & Proc. §3851 (4th ed.); see also Kay v. National City Mortg. Co., 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007).  Defendants' affidavits demonstrate that there are eight likely witnesses in this case who can testify to most of the material allegations in the amended complaint and that they all live in North Carolina.  Most of them previously worked for Residential in North Carolina but at least one is a North Carolina resident with no connection, past or present, to Residential.  Ohio would certainly be an inconvenient forum for these witnesses, and, more importantly, this Court cannot compel the non-party witnesses to testify at trial here. See Fed. R. Civ. P. 45.

Residential argues, but not on the basis of any affidavits or other factual submissions, that it intends to call witnesses who work for Residential and reside in Ohio.  Even if that were

8

true, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." 15 C.A. Wright, A.R. Miller & E.H. Cooper, Fed. Prac. & Proc. §3851 (4th ed.); see also Zimmer Enter., Inc. v. Atlandia Imports, Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio 2007). Accordingly, this factor also weighs in favor of transferring the case to North Carolina.

Third, Defendants argue that the public interest favors the transfer of this case to North Carolina because North Carolina law controls and because North Carolina has a local interest in deciding a controversy that arose in its jurisdiction. Residential counters that no specialized knowledge of North Carolina law is required to resolve this case. The Court concludes that this factor is not entitled to much weight, but that it slightly favors transfer simply because North Carolina law will govern the resolution of any substantive legal disputes which arise. See Slate Rock Constr. Co. Ltd., supra, at *10 (in case where Pennsylvania law governed, "[w]hile this Court could apply Pennsylvania law, this factor suggests that transfer to Pennsylvania is appropriate").

Residential's final argument in opposition to a change of venue is that "[a] plaintiff's choice of forum is given great weight." (Doc. 12 at 3 (citing Hobson v. Princeton-New York Investors, Inc., 799 F. Supp. 802, 804 (S.D. Ohio 1992)). There is some debate about exactly what this legal maxim means; certainly, that choice is not controlling, see Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 413 (6th Cir. 1998), but it does serve to place the burden on the moving party to demonstrate that a change of venue is warranted. City of Columbus v. Hotels.com, L.P., 2007 WL 2029036, *7 n.2 (S.D. Ohio July 10, 2007). It also precludes a change of venue when the ultimate result would simply be to shift the burden of inconvenience from one party to the

9

other.  Reed Elsevier, Inc., v. Innovator Corp., 105 F.Supp.2d 816, 821 (S.D. Ohio 2000).  As this Court has recognized, however, when none of the relevant conduct occurred in the plaintiff's chosen forum, this factor has less weight.  See American Signature Inc. v. Moody's Investors Services, Inc., 2010 WL 2667367, *2 (S.D. Ohio July 2, 2010).

Residential has chosen to sue in Ohio, as was its right under the parties' agreement.  However, as noted above, all of the other factors in this case either moderately or strongly favor a change of venue to North Carolina.  Further, because of the strong ties between the underlying events and North Carolina, and also because Residential either has or had a presence in that State (and in numerous other States besides Ohio), its choice of Ohio as the appropriate forum in which to litigate does not outweigh the reasons for transferring the case to North Carolina.

Simply put, the question in this case is whether Defendants have satisfied their burden to show that the connection of North Carolina to the events relevant to the claims, the convenience of the witnesses, and the public interests, outweigh Residential's choice of forum.  The Court finds that in light of the absence of evidence connecting the litigation to Ohio, the evidence that North Carolina will be more convenient for the witnesses and they can be subpoenaed to testify there, and the fact that North Carolina law controls the substantive legal issues in the case, the public and private interests strongly outweigh Residential's choice of forum.  Because that is true, the Court will grant the motion to change venue.

## IV. Order

For the foregoing reasons, Defendants' Motion to Transfer Venue to the Western District of North Carolina (Doc. 9) is granted.  This case shall be transferred to the Western District of North Carolina upon the expiration of the 14-day period for

filing motions to reconsider, if none are filed, or upon affirmance of the order by the District Judge, should that occur.

### MOTION FOR RECONSIDERATION

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp  
United States Magistrate Judge